# ARKANSAS COURT OF APPEALS

DIVISIONS II & III

**No.** CV-13-495

| | |
|---|---|
| CONNIE J. PARKER<br>APPELLANT<br><br>V.<br><br><br>ADVANCED PORTABLE X-RAY, LLC<br>APPELLEE | **Opinion Delivered** January 8, 2014<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G201074]<br><br>REVERSED AND REMANDED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

## KENNETH S. HIXSON, Judge

This is a workers' compensation case. Connie Parker worked for Advanced Portable X-Ray, LLC ("APX"), a mobile x-ray company. Parker's duties included driving the company van that carried the portable x-ray machine and providing x-ray services to patients. It is not disputed that on September 29, 2011, Parker was driving the company vehicle and providing employment services when she was rear-ended by another vehicle and sustained whiplash-type injuries. APX continued to pay Parker her regular wages while she was off work, but on January 26, 2012, prior to Parker being released to return to work, APX terminated Parker, and her last paycheck was for the pay period ending January 15, 2012.

On January 30, 2012, Parker sent a letter to the EEOC explaining her claim of wrongful termination in layman's terms. In March 2012, Parker filed a formal EEOC discrimination charge against APX, claiming that APX violated the Americans with

Disabilities Act when it fired her. In April 2012, Parker and APX settled the EEOC charge in a confidential mediation session wherein APX agreed to pay Parker "lost wages" of $60,000, less applicable taxes, in exchange for Parker not instituting a lawsuit under the Americans with Disabilities Act and Parker agreeing to "resign." On April 26, 2012, after withholding the appropriate taxes, APX wrote a check to Parker in the amount of $47,485 referencing a single pay period, the date of April 27, 2012. The following day, on April 27, 2012, Parker tendered a one-sentence "resignation" from her job with APX "in keeping with the terms of our settlement" of the EEOC charge.

In August 2012, Parker's workers' compensation claim proceeded to a hearing. Parker alleged she was entitled to medical benefits, temporary-total-disability (TTD) benefits, and attorney's fees.[1] APX controverted the claim and further alleged in the alternative that APX was entitled to a credit in the amount of $60,000 against any workers' compensation benefits as a result of the EEOC settlement proceeds. The Administrative Law Judge (ALJ) concluded that Parker had established the compensability of her injuries; that APX was responsible for medical treatment as reasonably necessary in connection with the compensable injuries; and that Parker was entitled to TTD benefits beginning January 16, 2012, until a date yet to be determined. However, the ALJ rejected APX's arguments (1) that Parker was "judicially estopped" from seeking TTD in light of her assertion in the EEOC documents that she was

---

[1]Parker contended that she had compensable injuries to her cervical and thoracic spine, as well as to her head, lower back, left shoulder and arm. Only her cervical and thoracic spine injuries were deemed compensable. She does not appeal from the denial of her claim with regard to her head, lower back, left shoulder and arm. Our discussion is limited to the injuries for which she was compensated.



able to work, and (2) that APX was entitled to a statutory credit for the money it paid Parker in the EEOC mediation settlement.

APX appealed to the full Commission. After its de novo review, the Commission awarded Parker medical benefits that were reasonably related to treat her compensable thoracic and cervical injuries, TTD to a date yet to be determined, and her attorney's fees. The Commission declined to find Parker "judicially estopped" from claiming TTD. The Commission, in contrast to the ALJ, determined that APX was entitled to a credit for "lost wages" it sought pursuant to Ark. Code Ann. § 11-9-807(b) (Repl. 2012). Parker filed a direct appeal, and APX filed a cross-appeal.

Parker contends on direct appeal that the Commission erred in awarding the $60,000 credit to APX. We reverse and remand on direct appeal. On cross-appeal, APX contends that the Commission erred in refusing to apply the doctrine of judicial estoppel to Parker's claim for TTD benefits, and, alternatively, that the Commission's decision to award her TTD benefits was not supported by substantial evidence. We affirm on cross-appeal.

We first address Parker's direct appeal. She contends that the Commission erred by awarding APX a credit pursuant to Ark. Code Ann. § 11-9-807 (Repl. 2012), which states:

**Credit for compensation or wages paid**.

(a) If the employer has made advance payments for compensation, the employer shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due.

(b) If the injured employee receives full wages during disability, he or she shall not be entitled to compensation during the period.



As relevant here, the Commission noted the following language of Parker and APX's EEOC mediation settlement agreement:

> 7. As evidence of a good faith effort to resolve EEOC Charge Number 493-2012-00562, [APX] offers and [Parker] accepts the following proposal of settlement or (the parties agree): A. [APX] agrees to pay [Parker] and her attorney the sum of Sixty Thousand Dollars ($60,000.00) as *lost wages*, in which all applicable federal, state and local taxes will be withheld on this sum . . . .

(Emphasis added.)

The ALJ found that APX had not shown that both parties intended for the settlement to be considered advance payments for compensation under subsection (a) and therefore, refused to grant APX the $60,000 credit. The ALJ did not discuss the applicability of subsection (b) and whether the settlement proceeds were full wages received during her disability.

Before the Commission, whose decision we review, APX did not argue that it was entitled to a credit for advanced wages under subsection (a) as discussed by the ALJ; rather, APX instead argued that it was entitled to a credit for "full wages" received during disability under subsection (b). The Commission decided that APX was entitled to a $60,000 "credit for lump sum wages that it paid the claimant in April 2012" under subsection (b) as "full wages" received during disability. The Commission did not discuss the applicability of "advanced wages" under subsection (a).

Parker argues in this appeal that subsection (b) does not apply in this instance and that APX did not prove its entitlement to this statutory credit. We cannot address the merits of her argument at this time because the Commission failed to render adequate findings upon which we can perform appellate review.

SLIP OPINION

In the Commission's "Opinion and Order" on this issue, the Commission recites the bare statute; states that APX is no longer seeking credit as "advance payments" under subsection (a); and repeats APX's request for a $60,000 credit in lost wages it paid to Parker. The Commission then simply concludes:

> The Full Commission agrees. Ark. Code Ann. § 11-9-807(b) (Repl. 2002) [sic] expressly provides that an injured employee shall not be entitled [to compensation] during the period that she receives full wages. Pursuant to a Mediation Settlement Agreement, the respondent-employer paid the claimant the sum of $60,000.00 in "lost wages, in which all applicable federal, state and local taxes will be withheld on this sum." The Full Commission finds that the respondent-employer is entitled to a credit for lump sum wages that it paid the claimant in April 2012.

The Commission provides no explanation of how Parker's EEOC mediation settlement proceeds described therein as "lost wages" equates to "full wages" under § 11-9-807(b). We are required to strictly construe workers' compensation statutes, meaning that we are to narrowly construe the statute, nothing to be taken as intended unless clearly expressed. *St. Edward Mercy Med. Ctr. v. Howard*, 2012 Ark. App. 673, __ S.W.3d __.

The Commission is not an appellate court. *Serrano v. Westrim, Inc.*, 2011 Ark. App. 771, 387 S.W.3d 292. The Commission reviews cases appealed to it de novo, and the duty of the Commission is not to determine whether there was substantial evidence to support the ALJ's findings; rather, it must make its own findings in accordance with the preponderance of the evidence. *Id, see also Pharmerica v. Seratt*, 103 Ark. App. 9, 285 S.W.3d 699 (2008).

The Commission is obliged to make findings and conclusions with sufficient detail and particularity to allow us to decide whether its decision is in accordance with the law. *Vijil v. Schlumberger Tech. Corp.*, 2011 Ark. App. 87; *Peters v. Doyle*, 2009 Ark. App. 722. When

those details are lacking, it is appropriate to reverse and remand to the Commission so that it can provide a decision upon which we can conduct a meaningful review. *See Cagle Fabricating & Steel, Inc. v. Patterson*, 309 Ark. 365, 830 S.W.2d 857 (1992). Here, the Commission did not make findings and conclusions with sufficient detail and particularity to allow us to decide whether its decision is in accordance with the law. We remand on direct appeal for the Commission to make findings and conclusions with sufficient detail and particularity on the applicability of Ark. Code Ann. § 11-9-807(b) and the amount of the credit, if any, available to APX under the facts of this case.

On cross-appeal, APX asserts that the Commission erred in not finding Parker to be judicially estopped from claiming entitlement to TTD, and furthermore, that even absent estoppel, the decision to award TTD is not supported by substantial evidence. We disagree with both arguments and affirm on cross-appeal.

APX asserts that Parker alleged inconsistent positions pertaining to her ability/inability to work. In grossly simple terms, APX asserts that in her EEOC claim, Parker alleged she was able to work with reasonable accommodation. On the other hand, in her workers' compensation claim, Parker asserted she was unable to work so as to receive TTD benefits. As to judicial estoppel, the Commission found, "The respondent [APX] did not prove that the claimant is judicially estopped from asserting entitlement to temporary total disability benefits in accordance with *Dupwe v. Wallace*, 355 Ark. 521, 140 S.W.3d 464 (2004)." This is unlike the direct appeal in which the Commission did not cite any authority or rationale to support its decision and we were unable to perform a meaningful review. Here, the

Commission expressly relied on *Dupwe* as precedent for its conclusion, and, therefore, that

requires us to analyze *Dupwe* within the context of this case.

The Arkansas Supreme Court in *Dupwe* undertook an exhaustive analysis into the

doctrine of judicial estoppel beginning with the first Arkansas case to use the term "judicial

estoppel" and expanded its analysis through the use of the legal encyclopedias Corpus Juris

Secundum and American Jurisprudence and case law from the United States Supreme Court

and other states. Some pertinent legal principles quoted in *Dupwe* are particularly appropriate

and relevant to our analysis:

> The best beginning point in our analysis is *Muncrief* [*v. Green*, 251 Ark. 580, 473 S.W.2d 907 (1971)] where this court stated that the appellee in that case was asserting judicial estoppel, "by which a party may be prevented from taking inconsistent position in *successive cases* with the same adversary."
>
> . . . .
>
> In discussing judicial estoppel in *Daley* [*v. City of Little Rock*, 36 Ark. App. 80, 18 S.W.2d 259 (1991)], the court of appeals cited to *Rinke* [*v. Weedman*, 232 Ark. 900, 341 S.W.2d 44 (1960)], for the proposition that the doctrine of judicial estoppel is of "vague application."
>
> . . . .
>
> In *House* [*v. Wakefield*, 42 Tenn. 325 (1865)], the Tennessee Supreme Court noted that the judgment at issue was:
>
> > a judgment regularly rendered upon the solemn admissions of the parties made *in the court of the suit*, and with the view of such admission being *acted upon by the court*.
>
> . . . .
>
> The principle laid out in *House* and characterized as "judicial estoppel" in C.J.S. is not a principle unfamiliar to this court.

7

. . . .

> In *Cox v. Harris*, 64 Ark. 213, 215, 41 S.W. 426 (1897), this court stated, "It is a familiar principle of law that one is not, as a rule, allowed to avail himself of inconsistent positions in a *litigation concerning the same subject matter.*"

*Dupwe*, 355 Ark. at 529–30, 140 S.W.3d at 467–70. (Emphasis added.)

It is to be noted that each of the precedents set forth above and relied on by the *Dupwe* court discusses actual successive cases between the same parties concerning the same subject matter, and the previous court relied upon the alleged prior inconsistent position. The *Dupwe* court went on to distinguish between the doctrine of judicial estoppel and the doctrine against inconsistent positions. There is a difference. The doctrine of judicial estoppel applies to cases actually litigated; the doctrine against inconsistent positions has a broader purview. The *Dupwe* court explained the difference:

> The doctrine against inconsistent positions is much broader than judicial estoppel. Judicial estoppel prohibits a party from manipulating the courts through inconsistent positions to gain an advantage. The doctrine against inconsistent positions may also apply to positions taken outside of litigation.

*Dupwe*, 355 Ark. at 531, 140 S.W.3d at 470. (Citation omitted.)

The *Dupwe* court cited examples of how inconsistent positions taken outside of litigation may violate the doctrine against inconsistent positions but not violate the doctrine of judicial estoppel. In *Wenderoth v. City of Ft. Smith*, 256 Ark. 735, 510 S.W.2d 296 (1974), the appellants previously in a public proceeding contended that a strip of land was public property; and, later in a lawsuit against the city, the appellants contended that the same strip of land was private. The court estopped the appellants from taking inconsistent positions. In *Dicus v. Allen*, 2 Ark. App. 204, 619 S.W.2d 306 (1981), the appellees previously relied on

8

a Whitfield survey and later in court, the appellees attempted to reject the Whitfield survey. The court stated, "We believe it would be inherently unfair to permit these appellees to take these inconsistent positions, and we, therefore, hold that they are estopped[.]" *Dicus*, 2 Ark. App. at 209, 619 S.W.2d at 308.

The *Dupwe* court concluded its analysis of judicial estoppel vis-a-vis the doctrine of inconsistent positions by stating: "Thus, it is apparent that the rule against assuming inconsistent positions in litigation, or in other words, judicial estoppel, is a branch of the doctrine against inconsistent positions." *Dupwe*, 355 Ark. at 532, 140 S.W.3d at 471. The *Dupwe* court then set about to define the elements of judicial estoppel in Arkansas. The *Dupwe* court adopted the rationale from *New Hampshire v. Maine*, 532 U.S. 742 (2001): "A party's earlier position must have been judicially accepted such that the inconsistent position in the later proceeding creates the perception that the *first or second court* was misled[.]" (Emphasis added.) The *Dupwe* court adopted the rationale from 21 C.J. *Estoppel*, § 233 at 1229–30 (1920): "1. The position must have been successfully maintained *in a former trial*." (Emphasis added.) Finally, the *Dupwe* court concluded that the following elements must be present to state a *prima facie* case of judicial estoppel: (1) a party must assume a position inconsistent with a position taken in an earlier case, or with a position taken in the same case; (2) a party must assume the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage; (3) a party must have successfully maintained the position in an earlier proceeding such that the court relied upon the position taken; and (4) the

integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken.

The *Dupwe* opinion provides an exhaustive analysis by our supreme court, making a distinction between the doctrine of judicial estoppel and the doctrine against inconsistent positions. We must adhere to the language carefully selected by the *Dupwe* court in its four *prima facie* elements of judicial estoppel. Applying *Dupwe*, it is apparent to this court that for the doctrine of judicial estoppel to apply, the alleged inconsistent positions must be contained within an "earlier case" as set forth in element (1), and that the alleged inconsistent positions must have been successfully maintained in an earlier proceeding such that the earlier court relied upon the position taken, as in element (3). Here, the alleged previous inconsistent position regarding the appellant's ability to work was made, if at all, in an EEOC proceeding that was settled prior to litigation and not within an "earlier case"; and, no earlier court relied upon that alleged inconsistent position. We hold that the Commission did not err in finding that the doctrine of judicial estoppel was not applicable in this case, and we affirm on this issue.

Moving to the issue of Parker's entitlement to TTD, we review the evidence in a workers' compensation appeal in the light most favorable to the decision of the Commission and affirm if it is supported by substantial evidence. *Tucker v. Bank of Am.*, 2013 Ark. App. 585. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* On review, the issue is not whether we might have reached a

different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Id.*

APX contends that there is no substantial evidence to support the Commission's award of TTD to Parker from January 16, 2012, to a date yet to be determined. We disagree. TTD is that period within the healing period in which the employee suffers a total incapacity to earn wages. *RPC, Inc. v. Hargues*, 2011 Ark. App. 264. The healing period is that period for healing of the compensable injury, which continues until the employee is as far restored as the permanent character of the injury will permit. *Smallwood v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 466, 375 S.W.3d 747. If the underlying condition causing disability has become stable, and nothing further in the way of treatment will improve the condition, then the healing period has ended; it is a question of fact for the Commission to answer. *Id.*

The evidence presented at the hearing demonstrated that Dr. Katz of Northwest Arkansas Neurosurgery Clinic took Parker off work in December 2011. Dr. Ennis, an interventional pain specialist, opined that as of January 9, 2012, Parker was unable to travel due to the pain caused by her compensable injury. APX's office manager stated in writing on January 9, 2012, that Parker "will NOT be allowed to return to work until we have received a medical release from her attending physician and she can totally perform all areas of her job description." (Emphasis in original.) There was no evidence that Parker had ever been released from her attending physician's care. On May 22, 2012, Dr. Piechal, an osteopathic physician from the Healing Arts Medical Center, stated that Parker was to remain off work "indefinitely." This was the evidence that the Commission deemed most credible

and persuasive, and we cannot say that reasonable minds could not conclude that Parker was entitled to TTD from and after January 16, 2012. We affirm the award of TTD.

Reversed and remanded on direct appeal; affirmed on cross-appeal.

HARRISON, WYNNE, and GLOVER, JJ., agree.

PITTMAN and WOOD, JJ., dissent.

**RHONDA K. WOOD, Judge, dissenting.** I respectfully disagree with the majority's decision reversing and remanding the Commission's finding that the employer was due a $60,000 credit against the amount of benefits that the employer must pay to appellant. The majority writes that "[w]e cannot address the merits of her [appellant's] argument at this time because the Commission failed to render adequate findings upon which we can perform appellate review." The majority's concern is that the Commission did not explain how appellant's settlement for "lost wages" would equate to "full wages" under Arkansas Code Annotated Section 11-9-807(b), and they contend this is necessary for appellate review.

The reason the Commission did not address the correlation between "lost wages," the language in the settlement agreement, and "full wages," the language required by statute, is because appellant did not raise this issue to the ALJ or the Commission. Notably, appellant has not even raised this issue on appeal. The long-standing precedent of this court is that we will not address issues raised for the first time on appeal nor will we raise issues on appellant's behalf ourselves.[1] *St. Edward Mercy Med. Ctr. v. Chrisman*, 2012 Ark. App. 475, at 6, __ S.W.3d. __, __. It is for this reason that I dissent.

_____

[1]There are exceptions to this, but they are inapplicable in the present case.

12

The issue raised by appellant to the Commission and on appeal was that she did not intend for the $60,000 payment under the settlement agreement to be wages. In an appeal from a decision of the Commission, we review the evidence in the light most favorable to the Commission and affirm if there is substantial evidence to support the decision. *Tucker v. Bank of Amer.*, 2013 Ark. App. 585. If reasonable minds could reach the same conclusion as the Commission, we must affirm. *Id.*

The settlement agreement stated that appellant would receive $60,000 for "lost wages." Both appellant and appellee signed the agreement. Income taxes were withheld from the $60,000. These facts alone are substantial evidence for the Commission to find that the $60,000 settlement amount was for wages, thus entitling the employer for a credit under the statute. We have held that "full wages" are "the money rate paid to recompense services rendered." *St. Edward Mercy Med. Ctr. v. Howard*, 2012 Ark. App. 673, at 6, __ S.W.3d. __, __. Viewing the evidence in the light most favorable to the Commission's findings, one sees that the settlement agreement's statement that the payment was for "lost wages" equated to payment of monies to compensate the appellant for employment services, our definition of "full wages." It was for the Commission to determine the credibility of the appellant's argument that she didn't intend for the settlement to be wages. It is apparent the Commission placed greater weight on the written language of the settlement agreement than on appellant's self-serving argument. Further explanation by the Commission on remand would not alter the substantial evidence supporting their decision on the issue on appeal–that the settlement monies were wages.



For the reasons stated above, I would affirm the Commission's decision. Therefore, I dissent.

PITTMAN, J., joins.

*Tolley & Brooks, P.A.*, by: *Evelyn E. Brooks*, for appellant.

*Bassett Law Firm LLP*, by: *Dale W. Brown*, for appellee.