

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-13-731

|  |  |
|---|---|
| | **Opinion Delivered** February 12, 2014 |
| JEREMY A. ROYAL, DECEASED CRYSTAL ROYAL<br>APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G007193] |
| V. | |
| BYPASS DIESEL & WRECKER, INC. STARNET INSURANCE CO. YORK RISK SERVICE GROUP, INC., DEATH & PERMANENT TOTAL DISABILITY TRUST FUND<br><br>APPELLEES | |
| DEATH & PERMANENT TOTAL DISABILITY TRUST FUND<br>CROSS-APPELLANT | AFFIRMED ON DIRECT APPEAL; REVERSED AND REMANDED ON CROSS-APPEAL |

## BRANDON J. HARRISON, Judge

Jeremy A. Royal died in a workplace accident in 2010. Jeremy was survived by his widow, Crystal Royal, her children A.M. and D.S., Jeremy's ex-wife, Rosana Royal, and her children T.R. and A.R. The Commission found that Crystal Royal had no expectation of monetary support from Jeremy and therefore could not receive survivor benefits because she was separated from him and had already filed for a divorce when he died. The Commission also found that Bypass Diesel & Wrecker, Inc., Jeremy's

SLIP OPINION

employer, was entitled to a credit against its obligations to the Death & Permanent Disability Trust Fund for the weekly death benefits it had paid to Crystal. Crystal appeals the Commission's denial of benefits to her; the Trust Fund cross-appeals the credit issue. We affirm the Commission's decision to deny Crystal benefits but reverse the credit and remand the case for proceedings consistent with this opinion.

## I. *The Direct Appeal—Death Benefits*

### A. Factual & Procedural History

Jeremy Royal married his second wife, Crystal Royal, in 2006. The couple had no children together but each had minor children from other marriages. Jeremy worked for Bypass Diesel when he was killed in a work-related accident in August 2010. Crystal and Jeremy had been separated for three months when he died. According to Crystal, she filed for divorce in early June after Jeremy beat her badly. In her divorce complaint, Crystal did not ask for spousal support. After filing for divorce, Crystal removed Jeremy from her phone plan and dropped him from her health and life insurance.

Crystal's and Jeremy's finances are relevant given the death-benefits issue. Crystal has worked for the Bowie Correctional Center for the past six years. Even with both spouses working, the Royals had a hard time making ends meet. They had numerous debts, and the IRS had frozen Jeremy's checking account for failure to pay taxes. Crystal's checks were to be direct-deposited into an account with only her name on it. Jeremy would sign his paychecks over to Crystal, and she would deposit them into her account. The couple had a mortgage on the marital home, a loan for siding, a loan for a refrigerator, a loan for Crystal's brother's truck, other vehicle loans, all-terrain vehicle

loans, charges for gas and groceries at a local store, unpaid utility bills, and unpaid credit-card balances.

Crystal testified at the agency hearing about their finances and relationship when Jeremy died. Crystal was unsure if she and Jeremy would have gotten back together. She testified that he beat her up over thirty times but this was the first time that she had filed for divorce. She indicated that "it was over." She did not drop the divorce before Jeremy passed away in August. In fact, in terms of the assets, she and Jeremy were just splitting up debt. She explained that they were not splitting up anything else because there were no assets.

Crystal also testified that, on several occasions during their separation, Jeremy gave her money to help support her. The payments ranged between $200–$300. Crystal said that they would meet somewhere other than the marital home because Jeremy was under a restraining order and wore an ankle bracelet to monitor him. Crystal also testified that nobody else was giving her money to help pay the bills except Jeremy and that she did not expect anyone other than Jeremy to help her.

Ida Calloway and Iona Jones testified on Crystal's behalf, telling the administrative law judge that Jeremy had financially supported Crystal during the separation and that the couple would have likely reunited eventually. The parties also presented the deposition testimony of Rosana Royal, Jeremy's first wife. Rosana stated that Jeremy was in love with a woman named Trista, planned on marrying her, and was living with her before he died. Rosana also mentioned that, a day or two before he died, Jeremy promised to pay $75 to sign A.R. up for football but he "didn't have the money right then."

After the hearing the administrative law judge issued a written opinion denying Crystal weekly death benefits. The law judge wrote: "I find that the parties were dividing debts for the things they needed but there was simply insufficient income to expect continuing support. . . . Crystal Royal had no expectation of support from Jeremy Royal who died after divorce proceedings were initiated."

Based on Rosana Royal's deposition testimony, the law judge found that Jeremy was living with another woman that he planned on marrying and "there just wasn't enough income to go around" for him to support Crystal. "[I]f Jeremy Royal was giving Crystal Royal money to make payments on the loans, she did not do so. According to Rosana Royal, Crystal was saving money to leave [him]." The law judge emphasized Rosana's testimony that Jeremy Royal didn't have the $75 needed to pay for his son's football-enrollment fee.

Conversely, the law judge placed little weight on Ida Calloway's and Iona Jones's testimony because they did not know anything about the domestic abuse Crystal had suffered or Jeremy's troubles with the IRS. The law judge found it significant that Calloway could not specify the amount of money that Jeremy had given Crystal and that Jones admitted to having a failing memory.

The law judge ultimately concluded that there was "no evidence that the parties were trying to reconcile," observing that Jeremy had stopped paying for Crystal's brother's truck, and that Crystal had cut ties with Jeremy because of domestic abuse, filed for divorce, removed him from her phone plan, dropped his health and life insurance, and

was unable to contact him until she obtained his phone number from Rosana Royal to discuss the court-ordered restitution in the criminal domestic-abuse case.

The Commission affirmed and adopted the law judge's opinion on this point. So we must consider the law judge's order and the Commission's order in our review. *Death & Permanent Total Disability Trust Fund v. Branum*, 82 Ark. App. 338, 107 S.W.3d 876 (2003).

## B. Analysis

In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences in the light most favorable to the Commission's decision and affirm if that decision is supported by substantial evidence. *Smith v. City of Ft. Smith*, 84 Ark. App. 430, 143 S.W.3d 593 (2004). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the reviewing court might have reached a different result from the Commission. If reasonable minds could have reached the Commission's result, then we affirm. *Id.*

Arkansas Code Annotated section 11-9-527(c) (Repl. 2007) outlines the benefits to be paid to the family of a worker who dies. The statute requires that compensation "be paid to those persons who were wholly and actually dependent upon the deceased employee." A widow is a family member who is eligible for survivor benefits. Ark. Code Ann. § 11-9-527(c)(1)–(2). Section 11-9-102(20)(A) states that "a [w]idow shall include only the decedent's legal wife, living with or dependent for support upon him at the time of his death."

Whether Crystal was actually dependent upon Jeremy when he died is a fact question. *Death & Permanent Total Disability Trust Fund v. Rodriguez*, 104 Ark. App. 375, 378, 292 S.W.3d 827, 830 (2009); Ark. Code Ann. § 11-9-527(h) (dependency determined at time when injury occurred). "Actual dependency" does not require a finding of total dependency. It may be established by showing either actual dependency or a reasonable expectancy of future support—even if no actual support has been provided. *Id.*

Was the Commission's decision to deny Crystal benefits supported by substantial evidence? Crystal argues that she is entitled to benefits because she, Ida Callaway, and Iona Jones proved that Jeremy was paying household bills, loans, and giving Crystal money after they had separated. Crystal also notes that Jeremy was giving her money that she relied on to maintain her standard of living while they were separated. Although they were not living together when he died, Crystal maintains that "there was no evidence that [she and Jeremy] were destined for a final decree of divorce."

Crystal makes good points, but substantial evidence supports the Commission's decision that she was not actually dependent on Jeremy when he died. When Jeremy died, Crystal was working full time to support herself and her children. She lived apart from Jeremy and had filed for divorce without asking for any support from him. Her own testimony caps his monthly contributions to the family at $200–$300, which, when added together with all the expenses, was "insufficient," as the law judge's order determined. Crystal did not produce documents tending to establish that Jeremy gave her money that she would deposit into her bank account. The debt-collection schedule in the record

showed that she was behind on her loan payments. The law judge concluded that if Jeremy was giving Crystal money for the loan payments, then Crystal did not use it for that purpose because she was saving up money to leave him and was therefore not actually dependent on him. The law judge's conclusion that Crystal was not actually dependent on Jeremy was not unreasonable under the circumstances.

Did Crystal have a reasonable expectation of support from Jeremy when he died? No; or at least the record contains substantial evidence that Crystal did not have the statutorily required expectation. Again, the law judge placed little weight on Calloway's and Jones's testimony that Jeremy had supported Crystal—and that it was likely they would reunite—because they did not know about the domestic abuse or Jeremy's tax problems. And Crystal herself could not say with certainty that they would have reconciled had Jeremy not died. On cross-examination, she agreed that the relationship "was over." Moreover, Crystal had not withdrawn the divorce papers, had not asked for spousal support in her complaint, and a valid protection order was in place against Jeremy when he died. And as we have also mentioned, Crystal had removed him from her phone plan and dropped his health and life insurance. The law judge's conclusion that Crystal did not have a reasonable expectation of support from Jeremy when he died is a supportable one given this record.

Crystal had the burden to establish facts showing dependency upon Jeremy before being entitled to benefits. *See Lawhon Farm Servs. v. Brown*, 335 Ark. 272, 984 S.W.2d 1 (1998). The Commission was charged to find the facts and assess the credibility of the witnesses. Its decision carries the force of a jury verdict. *Finley v. Farm Cat, Inc.*, 103 Ark.



App. 292, 288 S.W.3d 685 (2008). Because we are not left with a firm and definite conviction that the Commission made a mistake when it concluded that Crystal was not dependent on Jeremy, we affirm the Commission's decision to deny Crystal weekly death benefits.

### III. *The Cross-Appeal*

### A. Procedural & Factual History

Bypass Diesel and its insurance carrier realized at some point that Jeremy and Crystal were separated when he died, controverted Crystal's claim for $246.16 in weekly death benefits, and asked for reimbursement and a credit for the money it had mistakenly paid her. This issue was tried at the agency hearing in 2012.

The Trust Fund argued to the law judge that if Crystal was not entitled to benefits, then the payments that Bypass Diesel made to her were void from the start because they were made to an unqualified individual. The Trust Fund also argued that Bypass Diesel should not get any credit against its obligation to the Fund for the erroneous payments. The law judge concluded that Bypass Diesel and its insurance carrier were "not entitled to a credit or reimbursement."

The Commission reversed on this point, relying on a good-faith strand:

> We find that [Bypass Diesel and its carrier] [are] entitled to classify and credit all benefits paid to Crystal Royal as weekly benefits for death pursuant to Ark. Code Ann. § 11–9–502(b)(1)(B) (Repl. 2007). Benefits were paid to Crystal Royal as weekly benefits for death pursuant to Ark. Code Ann. § 11–9–502(b)(1)(B) (Repl. 2007). Benefits were paid to Crystal Royal in good faith based on information provided to [Bypass Diesel and its carrier] at the time of the claimant's injury and the filing of the requested Commission forms.



Upon later learning that Crystal Royal did not qualify for benefits, [Bypass Diesel and its carrier] ceased payment. Accordingly, [Bypass Diesel and its carrier] paid benefits pursuant to Ark. Code Ann. § 11-9-527(c) (Repl. 2002) which accrues toward their liability under Ark. Code Ann. § 11-9-502(b)(1)(B) (Repl. 2007) even though such benefits were paid in error.

The Trust Fund filed a motion for reconsideration and clarification from the Commission's order. In that motion the Trust Fund argued that no statute or the caselaw permits a credit when an employer made weekly payments "in good faith" to a person who was not legally entitled to receive benefits. This is because benefits that are paid to someone who is not entitled to them do not fall under the definition of "compensation" under the statute. The Commission, in the Fund's view, impermissibly expanded the statute's plain terms to include a "good faith" exception when none exists and unlawfully accelerated the date upon which the Fund would have to take over payments.

In the alternative, the Fund argued that if Crystal Royal had somehow willfully misled Bypass Diesel into paying her benefits, then the appropriate solution would be to refer the case to the Fraud Unit or award costs for bringing a proceeding without reasonable grounds, not awarding the employer a credit for payments. And if there was no willful misrepresentation, then Bypass Diesel and its carrier should bear the cost of the erroneous payments because they failed to be diligent in examining the circumstances of the case. The Fund reasoned that if Bypass Diesel had investigated in a timely manner after Jeremy's death, it would have discovered the same set of facts that were revealed after it had been erroneously paying survivor benefits for almost a year.

The last argument the Trust Fund made in its motion was that the Commission's majority opinion did not take into account the "serious financial damage" done to A.R.,

SLIP OPINION

who, according to the Trust Fund, "is the only survivor beneficiary entitled to benefits." The Trust Fund argued that an employer credit hurts A.R. because A.R. must receive $182,650 in order for the Fund's obligation to arise and by the Trust Fund's count, A.R. had been underpaid approximately $36,732 because Crystal was wrongly included in his beneficiary class. The credit also hurt A.R. because he received no financial benefit from the money paid to Crystal as he was living in a different household.

The Commission denied the Fund's motion for reconsideration and clarification. In its order the Commission repeated its reasoning for the credit: Bypass Diesel and its carrier paid weekly death benefits to Crystal "in good faith" based on the information provided to it. As for Jeremy's biological child, A.R., the Commission wrote that "the parties stipulated that he was the natural child of the deceased. Therefore, his rights are statutorily controlled."

## B. Analysis

The sole issue here is whether Bypass Diesel and its insurance carrier are entitled to a credit for the money they paid Crystal Royal. This question of law is one of first impression that we will review de novo. *See Craven v. Fulton Sanitation Serv., Inc.*, 361 Ark. 390, 206 S.W.3d 842 (2005). We are, however, required to strictly construe workers' compensation statutes, meaning that nothing may be taken as intended unless clearly expressed in them. *Parker v. Advanced Portable X-Ray, LLC*, 2014 Ark. App. 11, at 5.

When an employee dies from a work-related event, those who were "wholly and actually dependent" on the deceased may be compensated. Ark. Code Ann. § 11-9-

527(c). Compensation is the "money allowance payable to the employee or his or her dependents." Ark. Code Ann. § 11-9-102(5). An employer must pay weekly death benefits in the amount of 325 times the maximum total-disability rate established for the date of the injury; after that, the Fund takes over the weekly payments. Ark. Code Ann. §§ 11-9-502(b)(1)(B), 502(b)(2)(B). Section 11-9-807(a) provides that "if the employer has made advance payments for compensation, the employer shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due."

No statutory provision permits an employer to receive a credit against its obligations to the Trust Fund when it paid a person who is not an employee or a dependent of an employee. The Commission relied on Ark. Code Ann. § 11-9-502(b)(1)(B) to support its credit, but that statute only provides the maximum amount of money that an employer must pay as compensation for an employee's work-related death. The statute is wholly silent on whether a credit for good-faith, but ultimately mistaken, payments may be given. Because Crystal was not Jeremy's dependent, the $246.16 that Bypass Diesel paid her each week cannot be counted as weekly death benefits or as compensation. Consequently, these payments do not accrue as a credit against its responsibility to the Trust Fund. We therefore reverse the Commission's credit to Bypass Diesel and its insurance carrier and remand the case for further proceedings consistent with this opinion.

Affirmed on direct appeal; reversed and remanded on cross-appeal.
WYNNE and GLOVER, JJ., agree.
*Moore, Giles & Matteson, LLP*, by: *Greg Giles*, for appellants.
*Mayton, Newkirk & Jones*, by: *David C. Jones*; and *David L. Pake*, for appellees.