# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV–14–350

|  |  |
|---|---|
| | **Opinion Delivered** October 8, 2014 |
| ADVANCED PORTABLE X–RAY, LLC<br>APPELLANT | APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION [NO. G201074] |
| V. | |
| CONNIE PARKER<br>APPELLEE | REVERSED AND REMANDED FOR<br>FURTHER PROCEEDINGS |

## KENNETH S. HIXSON, Judge

This is the second appeal in this workers' compensation case. In the first appeal, we remanded for the Commission to provide additional findings and conclusions on whether the employer was entitled to a statutory credit provided in Arkansas Code Annotated section 11–9–807(b) (Repl. 2012), and if so, the extent of the credit. *See Parker v. Advanced Portable X-Ray, LLC*, 2014 Ark. App. 11, 431 S.W.3d 374. Following our remand, the Commission found that the employer, appellant Advanced Portable X–Ray, LLC ("APX") was not entitled to this credit. APX appeals. We reverse because the Commission erred in its application of section 11-9-807(b).

The chronology of events in these proceedings are set out in detail in our first opinion, so we will not restate them. We will, however, provide an abbreviated explanation. Appellee Connie Parker worked for APX, a mobile x-ray company, and in September 2011, Parker

SLIP OPINION

sustained work–related injuries. APX continued to pay Parker her regular wages while she was healing, through January 15, 2012. APX terminated her from employment as of January 26, 2012, prior to her expected medical release.

On January 30, 2012, Parker sent a letter to the Equal Employment Opportunity Commission ("EEOC") followed by a formal discrimination charge in March 2012. She accused APX of violating the Americans with Disabilities Act ("ADA") when it fired her while she was disabled from working. In April 2012, Parker and APX settled the EEOC charge following a confidential mediation session wherein APX agreed to pay Parker "lost wages" of $60,000, less applicable taxes (tendering a $47,485 check), in exchange for Parker "resigning" and not instituting a lawsuit under the ADA. The settlement check referenced a one-day "pay period" of April 27, 2012, and it recited that this was "regular pay" for "earnings and hours" with a "net pay" of $47,485.

Parker's workers' compensation claim proceeded. APX contested her claim, arguing in part that it was entitled to a statutory credit pursuant to Arkansas Code Annotated section 11–9–807(a) or section 11–9–807(b). The statute provides:

**Credit for compensation or wages paid**.

(a) If the employer has made advance payments for compensation, the employer shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due.
(b) If the injured employee receives full wages during disability, he or she shall not be entitled to compensation during the period.

After a hearing conducted in August 2012, the administrative law judge issued his opinion in September 2012. In the administrative law judge's opinion, he awarded Parker temporary

total disability ("TTD") benefits from January 16, 2012 to a date yet to be determined and denied APX a credit under subsection (a).[1]  The Commission, in its de novo review, affirmed the TTD award but reversed the ALJ on the statutory-credit issue.  The Commission awarded APX the credit pursuant to subsection (b), finding that the "lost wages" referenced in the settlement were "lump sum wages" for purposes of subsection (b).  The Commission specifically noted that APX was not seeking a statutory credit pursuant to subsection (a) before the Commission.  Both parties appealed the Commission's April 2013 decision to our court.  In the first appeal, we stated that the Commission's opinion "provides no explanation of how Parker's EEOC mediation settlement proceeds described therein as 'lost wages' equates to 'full wages' under section 11-9-807(b)."  *Id.* at page 5.  Consequently, we remanded to the Commission "to make findings and conclusions with sufficient detail and particularity on the applicability of Arkansas Code Annotated section 11-9-807(b) and the amount of the credit, if any, available to APX under the facts of this case."  *Id.* at page 6.

On remand, the Commission made a finding that the "lost wages" paid in the EEOC settlement were "full wages" as contemplated in subsection (b).  It recited that "wages" are defined in the Workers' Compensation Act as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident," referencing Arkansas Code Annotated section 11-9-102(19).  The Commission further found that the settlement proceeds were not "advance payments for compensation" as contemplated by subsection (a), although that was not at issue, given that APX was no longer seeking a credit

---

[1]The ALJ did not address subsection (b).

under subsection (a) and our remand was limited to subsection (b). The Commission concluded that even though the settlement monies were "full wages," a statutory credit would be denied after the Commission strictly applied what it perceived to be the controlling appellate authority.[2] APX appeals, and we reverse because the Commission erred.

We review the evidence in a Workers' Compensation appeal in the light most favorable to the decision of the Commission and affirm if it is supported by substantial evidence. *Tucker v. Bank of Amer.*, 2013 Ark. App. 585. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* On review, the issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Id.*

The Commission clarified and concluded that the EEOC settlement proceeds were "full wages" for purposes of subsection (b). We do not disturb this finding of fact. APX does not argue that the Commission's finding of fact—that the settlement monies were "full wages"—is in error. Parker did not cross appeal any findings of fact or law. In sum, there is no dispute between the parties that the money received by Parker from the EEOC settlement was "full wages."

---

[2]The sole dissenting Commissioner stated that the appellate case law applicable to subsection (a) was inapplicable to subsection (b); that APX was not asserting or relying on subsection (a) as a basis to receive a credit; and that our court's remand was limited to findings and conclusions on the applicability of subsection (b), not (a).

What APX argues, in a compelling fashion, is that the Commission erred in its application of the law to the facts it found. We are required to strictly construe workers' compensation statutes, meaning that we are to narrowly construe the statute, nothing to be taken as intended unless clearly expressed. *St. Edward Mercy Med. Ctr. v. Howard*, 2012 Ark. App. 673. The correct interpretation and application of an Arkansas statute is a question of law, which we decide de novo on appeal. *See Stewart v. Arkansas Glass Container*, 2010 Ark. 198, 366 S.W.3d 358. While an agency's interpretation of applicable statutes is highly persuasive, it is not binding on appellate courts and will be overturned if clearly wrong. *Brigman v. City of West Memphis*, 2013 Ark. App. 66, __ S.W.3d __; *Arkansas Electric Energy Consumers, Inc. v. Arkansas Public Service Comm'n*, 2012 Ark. App. 264, 410 S.W.3d 47.

Arkansas Code Annotated section 11-9-807(b) provides that if the injured employee receives "full wages during disability," then she (Parker) is not entitled to "compensation during the period." As stated, we accept the Commission's finding of fact that the settlement proceeds were "full wages" for purposes of subsection (b). After APX terminated her employment, Parker remained in her healing period and was entitled to TTD—a form of compensation for disability—from and after January 16, 2012 to a date to be determined. Her entitlement to TTD, and the date on which it started, has already been established by the Commission.

Arkansas Code Annotated section 11-9-102(5) defines "compensation" to include "the money allowance payable to the employee." In this context, Parker's entitlement to TTD "obviously refers to money benefits paid to the injured employee for disability." *Brooks v.*

5

*Arkansas-Best Freight System, Inc.*, 247 Ark. 61, 64, 444 S.W.2d 246, 248 (1969). Arkansas Code Annotated section 11–9–102(8) defines "disability" as the inability to earn wages due to a compensable injury, i.e. TTD. The parties stipulated to Parker's TTD weekly rate at the maximum of $575. The ALJ determined that Parker's average weekly wage was $1,350.83, another finding not on appeal and now law of the case.

Applying these undisputed facts to the plain language of section 11–9–807(b), we hold that it disqualifies Parker from receiving TTD benefits during the period that she received "full wages." To hold otherwise would nullify section 11–9–807(b), and we cannot construe Arkansas statutory law in such a way as to render it meaningless. *Shipley, Inc. v. Long*, 359 Ark. 208, 195 S.W.3d 911 (2004).

It appears that there is some confusion regarding the scope of the relief available to the employer under subsection (b). While the title of the statute is "Credit for compensation or wages paid," the language in the body of the statute does not mention the word "credit" and does not describe how the credit is applied, if one is available. Hence, any understanding of the credit available must be gleaned from existing case law.

There are four potential interpretations of the relief available to the employer under subsection (b). Assuming the employee receives "full wages" during her disability, then the employer could potentially be entitled to a credit for (1) the amount of the TTD rate that the employee would have received; (2) the amount received by the employee in excess of the TTD rate; (3) the amount of the TTD rate plus the amount received in excess of the TTD rate; or (4) nothing.

The Commission expressed inconsistent conclusions regarding the credit potentially available to APX. At least three times in the majority opinion, the Commission recited that the employer was not entitled to any credit at all. At the conclusion of the opinion, however, the Commission stated: "The respondent-employer cannot deduct the excess of wages paid over the weekly compensation award." These two inconsistent statements must be reconciled in this appeal. The statute itself does not provide guidance, so we must look to the appellate case law interpreting this statute.

In support of its decision to deny any credit, the Commission relied primarily on three cases: *Emerson Electric v. Cargile*, 5 Ark. App. 123, 633 S.W.2d 389 (1982); *Southwestern Bell v. Siegler*, 240 Ark. 132, 398 S.W.2d 531 (1966); and *Looney v. Sears*, 236 Ark. 868, 371 S.W.2d 6 (1963). Upon closer examination, we hold that these cases do not support denial of the credit for payments made commensurate with the claimant's TTD rate.

We begin with a review of *Lion Oil Co. v. Reeves*, 221 Ark. 5, 254 S.W.2d 450 (1952). In *Lion Oil*, Mr. Reeves was injured, and the employer continued to pay his full wages, which were in excess of his maximum allowable TTD rate.[3] In a subsequent workers' compensation claim, the employer requested credit for the excess wages it paid over the TTD rate. The employer did not request a credit for payments made commensurate with the TTD rate. The Commission allowed the credit, and on appeal to the Arkansas Supreme Court, it affirmed the allowance of a credit for the amount paid in excess of the TTD rate. However, the

---

[3]The term "TTD rate" was not used during that time frame, and instead it was typically called the "weekly compensation rate." For purposes of simplification and clarity, we will use the more familiar phrase "TTD rate."

holding in *Lion Oil* was limited to its own facts in a supreme court case handed down eleven years later, *Looney v. Sears*, *supra*.

In *Looney*, Ms. Looney was employed by Sears, and she sustained a compensable injury. The Sears manager testified that they paid Ms. Looney full wages initially because, "Under company policy we normally, when someone is injured, pay them full salary for a period to see how they get along, in excess of the statutory requirements as we would in an illness case." *Looney*, 236 Ark. at 871. After it became apparent that she would be off for a significant period of time due to the workplace injury, Sears reduced Looney's payments to the weekly TTD rate. As a result of initially paying "full wages" for several weeks during her disability, Sears alleged that it overpaid Ms. Looney a cumulative amount of $601.73 during this period.[4] Sears requested that the TTD award be reduced by the excess overpayments and requested a credit pursuant to Arkansas Statutes Annotated section 81-1319(m) (Repl.1960).[5] The Commission agreed with Sears and granted Sears a credit for the $601.73 in excess wages in reliance upon *Lion Oil*. It is of significant importance that Sears did not request credit for the "wages" paid in an amount commensurate with the TTD rate. The *Looney* court explained: "During said absence, Sears paid her full wages, which amounted to $601.73 more

---

[4]There were actually two periods of overpayment totaling $1,291.95.

[5]**Credit for compensation or wages paid**.
"If the employer has made advance payments of compensation he shall be entitled to be reimbursed out of any unpaid instalment or instalments of compensation due. If the injured employee receives full wages during disability he shall not be entitled to compensation during such period." This is the same language as in our current statute; the present version divided the statute into two subsections—(a) and (b).

than her workmen's compensation payments would have been. This excess of $601.73 is here involved." *Looney*, 236 Ark. at 870. In reversing the credit given to Sears for the excess, the *Looney* court recognized and specifically limited *Lion Oil* stating that "for future guidance in such cases, we think it wise to now limit the holding of *Lion Oil Company v. Reeves* to its own particular facts." *Looney*, 236 Ark. at 871. Pursuant to *Looney*, the employer is not entitled to a credit for wages paid in excess of the TTD rate:

> When an employer continues to pay salary or wages to an injured employee during any time of injury, and such payments are in excess of workmen's compensation benefits, then when a workmen's compensation award is subsequently made, the excess of the wages paid over the weekly compensation award cannot be deducted from the award.

*Looney*, 236 Ark. at 872. This holding has not been disturbed by subsequent appellate court case law.

The Commission also cited *Southwestern Bell v. Siegler*, *supra*, as authority for its denial of the subsection (b) credit. A closer review of *Southwestern Bell* reveals that it does not support the finding of the Commission. Southwestern Bell provided its employees with a private benefit plan called the "Plan for Employees' Pensions, Disability Benefits, and Death Benefits." Siegler was injured on the job and made a claim under the benefit plan and received weekly benefits. Siegler subsequently filed a workers' compensation claim seeking benefits for a ten-percent permanent-partial disability. Southwestern Bell controverted the claim and requested a credit for payments received by Siegler from the benefit plan pursuant to Arkansas Statutes Annotated section 81-1319(m) (Repl. 1960).[6] Southwestern Bell sought

---

[6]*See* Footnote 5.

the credit only as "advanced payments of compensation" pursuant to what is now subsection (a), not as "full wages" received during disability pursuant to what is now subsection (b). Our supreme court held that the weekly benefits received from the employer's benefit plan were not advanced payments of compensation for Siegler's disability and that Southwestern Bell was not entitled to a credit pursuant to what is now subsection (a).

The next chronological case cited by the Commission was *Emerson Electric v. Cargile*, *supra*. Emerson Electric, like many employers, sponsored an elective group disability plan for its employees. The employees could elect the disability plan and if elected, the employees paid the premiums. Cargile sustained an on-the-job injury and filed a workers' compensation claim against Emerson Electric, which Emerson controverted. Cargile also filed a claim with his group disability policy, which paid Cargile weekly disability benefits. Eventually, Cargile won his workers' compensation claim against Emerson, and Emerson requested a credit under Arkansas Statutes Annotated section 81-1319(m)[7] as an "advanced payment of compensation" and not as "full wages during disability." The Commission denied the credit, and on appeal, our supreme court held: "Under this section if Emerson made advance payments of compensation to the appellee then credit should have been allowed." *Emerson*, 5 Ark. App. at 125. The supreme court concluded by holding that "private insurance procured by the employee does not come within that provision of our statute." *Emerson*, 5 Ark. App. at 127.

Each of the cases cited by the Commission in support of its opinion are distinguishable from the present appeal. In both *Lion Oil* and *Looney*, *supra*, our supreme court was called to

---

[7]*See* footnote 5.

10

interpret what is now codified at subsection (b), and as held in *Looney*, it interpreted the statute to mean that excess wages over the TTD rate are not to be credited to the employer. Those cases do not stand for the proposition that when an employer pays an employee "full wages" during a period of disability, the employee is entitled to both full wages and TTD. To construe the statute in that manner would effectively void subsection (b).

To clarify, when an employer pays an employee "full wages" during a period of disability and the employee is subsequently awarded TTD benefits for that period, the employer is entitled to a credit under subsection (b) for the amounts paid to the employee that are commensurate with the employee's TTD rate; the employer is not, however, entitled to a credit for amounts paid in excess of the TTD rate.

We note that in the context of disability retirement benefits, pursuant to Arkansas Code Annotated section 11-9-411, the Second Injury Fund may offset dollar-for-dollar any amounts paid to a claimant in order to prevent a claimant from receiving a double recovery. *See Second Injury Fund v. Osborn*, 2011 Ark. 232; *Mills v. Ark. State Hwy. & Transp. Dep't*, 2012 Ark. App. 395; *Henson v. General Electric*, 99 Ark. App. 129, 257 S.W.3d 908 (2007). The Workers' Compensation Act also provides in Arkansas Code Annotated section 11-9-410 that an insurer or an employer may pursue an action in tort against a third-party tort-feasor to ensure that the claimant is not doubly compensated to the detriment of the employer and insurer. *See Vanderpool v. Fidelity & Casualty Ins. Co.*, 327 Ark. 407, 939 S.W.2d 280 (1997). To allow an employee to receive "full wages" and weekly TTD benefits would similarly be allowing double recovery to the claimant.

11

We hold that appellant APX requested a credit that is sanctioned by subsection (b) for the amount commensurate with Parker's TTD rate, and the Commission clearly erred in not allowing the credit. We reverse and remand for the Commission to ascertain the period of disability that the settlement proceeds—deemed "full wages"—represented and to determine the precise credit available to APX.

Reversed and remanded for further proceedings.

PITTMAN and WALMSLEY, JJ., agree.

*Bassett Law Firm LLP*, by: *Dale W. Brown* and *Grace K. Johnson*, for appellant.

*Tolley & Brooks, P.A.*, by: *Evelyn E. Brooks*, for appellee.