WAL-MART STORES, INC. *v.* Brenda VanWAGNER

98-1364 990 S.W.2d 522

Supreme Court of Arkansas
Opinion delivered May 6, 1999

*Bassett Law Firm*, by: *Curtis L. Nebben*, for appellant.

*McKinnon Law Firm*, by: *Laura J. McKinnon*, for appellee.

L AVENSKI R. SMITH, Justice. This is an appeal from a decision of the Workers' Compensation Commission. The single issue is whether the Commission's decision that appellee, Brenda VanWagner, suffered a compensable injury is supported by substantial evidence. The case requires an interpretation of our workers' compensation statute provisions specifying that a compensable injury be established by objective medical evidence. In particular, it concerns Ark. Code Ann. § 11-9-102 (Supp. 1997), including subsections (5)(A)(i), (5)(D), and (5)(E) made a part of the code by Act 796 of 1993. The case is before this Court on a grant of petition for review pursuant to Ark. Sup. Ct. R. 1-2(e)(i). Appellant, Wal-Mart Stores, Inc. ("Wal-Mart"), contends VanWagner failed to show by a preponderance of the evidence that she suffered a compensable injury to her right breast implant in the course of her employment. Wal-Mart asserts that the Commission's decision, therefore, is not supported by substantial evidence. We disagree and affirm.

Appellee began working for Wal-Mart in July of 1994. It is undisputed that she had breast implants as a result of reconstructive surgery following a double mastectomy in the early 1980s. It is also undisputed that appellee suffered an injury to her shoulder at work on November 17, 1994. She received medical treatment from Dr. Gary Moffit. After the shoulder injury, VanWagner was returned to work on "light duty." VanWagner alleges that on

November 25, 1994, while working in the Wal-Mart bakery, she slipped on water, and in raising her arm to protect her shoulder as she began to stumble, fell against a piece of equipment suffering injury to her right chest. She contends this fall displaced and ruptured her right breast implant. VanWagner reported the injury to her supervisor, but no record of the report exists. Appellee reported the incident to Dr. Moffit on November 28, 1994. His medical report contradicted her statement that she had experienced a lot of bruising after the fall. VanWagner first mentioned displacement of her breast implant to Dr. Moffit on June 20, 1995, who referred her to a plastic surgeon, Dr. Alderson. Dr. Alderson performed surgery and substantiated that the right implant was displaced and ruptured. The Administrative Law Judge found VanWagner showed by a preponderance of the evidence that she suffered the injury in the course of her employment. Upon review, the full Workers' Compensation Commission adopted the judge's findings.

### Standard of Review

 Upon a petition for review, we consider a case as though it were originally filed in this court. *Burlington Indus. v. Pickett*, 336 Ark. 515, 988 S.W.2d 3 (1999). On appeal in a worker's compensation case from the Court of Appeals to this Court, the evidence must be viewed in the light most favorable to the Commission's decision, and its decision must be upheld if supported by substantial evidence. *Deffenbaugh Indus. v. Angus*, 313 Ark. 100, 852 S.W.2d 804 (1993). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusion arrived at by the Commission. *Pickett* at 518; *E.R.C. Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998).

### Compensable Injury

Prior to an examination of whether substantial evidence supported the Commission's finding that appellee suffered a compen-

sable injury, we must clarify the meaning of compensable injury. Appellant argues that based on Ark. Code Ann. §§ 11-9-102(5)(A)(i), (5)(D) and (5)(E)(i), in order for appellee's injury to be compensable, it must be established by showing: (1) that it arose out of and in the course of employment; (2) that it occurred accidently as a result of a specific identifiable incident; and (3) that it was established by medical evidence supported by objective findings, *i.e.*, findings not within the control of appellee. Appellant asserts that medical evidence is necessary not only to establish the existence of an injury, but also to establish that a work-related accident caused the injury. Appellant, therefore, contends objective medical evidence of causation is elemental to proper proof of a compensable injury.

This court has not previously addressed this question. However, the Arkansas Court of Appeals has in at least two published opinions directly confronted the issue. In *Stephens Truck Lines v. Millican*, 58 Ark. App. 275, 950 S.W.2d 472 (1997), a worker alleged injury to his back when he fell while pulling a tarp over a load on a truck. The worker went to the emergency room and complained of neck pain, but it was not until several weeks later that an MRI revealed herniation at C4-C5 in his spinal column. The employer contested compensability. It contested it, not as to the existence of the injury, but as to the injury's causation by a work-related incident. The employer contended that objective medical evidence was necessary to show that the injury occurred on the alleged date or while working for the employer. The court of appeals held to the contrary, stating, "Were we to interpret the Act so strictly as to require objective medical evidence to prove nonmedical elements of compensability, we would defeat the overriding legislative intent. Consequently, we hold the requirement that a compensable injury must be established by medical evidence supported by objective findings applies only to the existence and extent of the injury." *Id.* at 280. The court of appeals cited to *Stephens Truck Lines* in *Aeroquip, Inc. v. Tilley*, 59 Ark. App. 163, 954 S.W.2d 305 (1997). In *Tilley*, a worker with prior back problems alleged injury to his back from being pulled across a table by a 700 to 800 pound work implement. The court upheld

the Commission's award citing *Millican* and stating, "A claimant need not offer objective medical evidence to prove circumstances under which the injury was sustained or the precise time of the injury's occurrence." *Id.* at 168.

We find the court of appeal's reasoning in *Millican* and *Tilley* persuasive. We therefore adopt the holding in *Millican* that objective medical evidence is necessary to establish the existence and extent of an injury but not essential to establish the causal relationship between the injury and a work-related accident. The plethora of possible causes for work-related injuries includes many that can be established by common-sense observation and deduction. To require medical proof of causation in every case appears out of line with the general policy of economy and efficiency contained within the workers' compensation law. To be sure, there will be circumstances where medical evidence will be necessary to establish that a particular injury resulted from a work-related incident but not in every case.

Adopting the *Millican* holding does not fully resolve this case, however. It means that appellee need not produce objective medical evidence that the fall she said occurred on November 25, 1994, caused her injury where objective medical evidence established the injury's existence, and a preponderance of other non-medical evidence established a causal relation to a work-related incident. The remaining question, then, is did appellee meet her burden with the evidence she did produce? The principal evidence of causation for appellee's injury consisted of appellee's own testimony. She testified regarding the fall, reporting it to her supervisor, seeking medical attention and that others present witnessed it. She also offered some physician testimony recorded months later which was at best inconclusive. Appellant countered this evidence with the testimony of appellee's supervisor who could not remember the incident and with physicians' statements in which the physicians were unwilling to state a causal connection between the alleged fall and appellee's medical condition. This case then resolves down to a matter of credibility. Was the claimant's story believable?

■ ■ Our case law on this issue is clear. Credibility of witnesses is properly the province of the Commission, which had the benefit of the witnesses' presence to judge their demeanor and determine the weight to be accorded their statements. *Gansky v. Hi-Tech Engineering*, 325 Ark. 163, 924 S.W.2d 790 (1996). Upon review, it is not a matter of whether we would come to a different conclusion but whether reasonable minds could reach the Commission's conclusion. *Pickett, supra.* After reviewing the record, we hold that reasonable minds could reach the Commission's conclusion and therefore affirm its decision that claimant suffered a compensable injury.

Affirmed.

ARNOLD, C.J., dissents.

CORBIN, J., not participating.

W H. "DUB" ARNOLD, Chief Justice, dissenting. The claimant has failed to satisfy the requirements of Ark. Code Ann. §§ 11-9-102(5)(A)(i), 11-9-102(5)(D), and 11-9-102(5)(E)(i) (Supp. 1997), which state in part:

(5)(A) 'Compensable injury' means

(i) An accidental injury causing internal or external physical harm to the body or accidental injury to prosthetic appliances . . . *arising out of and in the course of employment* and which requires medical services or results in disability or death. An injury is 'accidental' *only* if it is caused by a *specific incident* and is identifiable by time and place of occurrence.

\*\*\*

(D) A compensable injury *must* be established by *medical evidence, supported by 'objective findings' as defined in § 11-9-1-2(16).*

(E) *Burden of Proof.* The burden of proof of a compensable injury shall be on the employee and shall be as follows:

(i) For injuries falling within the definition of compensable injury under subdivision (5)(A)(i) of this section, the burden of proof shall be a *preponderance* of the evidence. (Emphasis added.)

The majority would award benefits based upon the claimant's testimony that she struck her right chest against a proofer machine in the bakery and that this blow caused swelling, redness, and obvious bruising of her right breast. She claims that Dr. Gary Moffett noted the swelling and bruising on her November 25, 1994, visit. Dr. Moffett does not support this contention. In his report dated November 28, 1994, Dr. Moffett stated:

> Brenda is seen today for complaint of worse shoulder pain. She states that while she is [sic] at work she slipped on the floor and through [sic] her right arm up in the air as she did. She states that it caused worsening pain, particularly along the anterior portion of her chest. She had a friend with her today and states that she had a lot of bruising on her anterior chest. However, *on visual inspection I found no bruising whatsoever.* (Emphasis added.)

As pointed out by the appellant, the first documented complaint regarding the right breast is the report of Dr. Moffett dated June 20, 1995. Dr. Moffett noted:

> She then started asking about her breast implant on the right side being higher than the one on the left side and she thinks that this is related to the injury as well. *I told her I don't see any relationship between it and the injury,* [*i.e.,* right shoulder injury] but I gave her the name of Dr. Alderson who is a plastic surgeon that she could see to have take care of this. *Once again, I do not think it is a work related situation.* (Emphasis added.)

Dr. Moffett referred the claimant to Dr. Roger Alderson and he first saw the claimant on July 12, 1995. Dr. Alderson states:

> I told her that knowing the history of a 14 year old Silicone gel implant, there was a possibility of gel leakage. *I could not determine cause and effect if she is demonstrated to have a leak, whether that was related to her injury at Wal-Mart or whether it could have been preexisting.* (Emphasis added.)

The Workers Compensation Commission accepts the claimant's testimony that she sustained an injury to her silicone implant and that she had a lot of bruising on her chest. She claims that Dr. Gary Moffett noted the swelling and bruising on her November 25, 1994 visit. However, Dr. Moffett disagrees with this state-

ment. In his November 28, 1994 report Dr. Moffett states: "However, on visual inspection I found no bruising whatsoever." Dr. Alderson said that he could not determine if the possibility of a gel leakage was related to her injury at Wal-Mart. However, the majority relies upon the medical testimony to affirm the case.

On appeal of a workers' compensation case from the court of appeals to this court, we view the evidence in the light most favorable to the Commission's decision and affirm that decision *if it is supported by substantial evidence, Cleek v. Great Southern Metals,* 335 Ark. 342, 981 S.W.2d 529 (1998). *Substantial evidence exists if reasonable minds could have reached the same conclusion.*

The questionable testimony of the claimant and the testimony of the doctors certainly does not compel a conclusion one way or the other, without resort to speculation or conjecture. Reasonable minds could not have reached the decision that was reached by the Commission in this case. The majority is sending the wrong message in affirming this case.

Based upon the majority opinion, the claimant can report her claim seven months after the alleged injury, simply state that she has suffered a compensable injury, and, even though her testimony is contradicted, the claim is compensable. No positive medical testimony is required, no physical evidence is required, and no witness is required; just a questionable statement by the claimant makes the claim compensable. The burden of proof would no longer be a preponderance of the evidence. For all of these reasons, I would reverse and dismiss.