2011 Ark. App. 771

**Maria SERRANO, Appellant**

v.

**WESTRIM, INC., Arch Insurance Co., and Travelers Insurance Co., Appellees.**

**No. CA 11–678.**

Court of Appeals of Arkansas.

Dec. 14, 2011.

Evelyn Elizabeth Brooks, Fayetteville, for appellant.

Phillip Parks Cuffman and Guy Alton Wade, Little Rock, for appellee.

LARRY D. VAUGHT, Chief Judge.

Appellant Maria Serrano appeals from the Arkansas Workers' Compensation Commission opinion finding that she did not sustain a compensable carpal-tunnel-syndrome (CTS) injury to her right hand. We reverse and remand for further findings.

Serrano, now fifty-three years old, started her first job outside the home in 2002 when she began working for appellee Westrim, Inc. (Westrim), a production and distribution company of paper products for scrapbooking and crafting. Serrano worked in various departments at Westrim,[1] all of which involved hand-intensive labor. She worked eight-hour days, stopping for two fifteen-minute breaks and one thirty-minute lunch. In November 2007, Serrano was transferred to the shipping department, which was less hand-intensive. She worked in this department until she was laid off in May 2008 due to the company's closure. She has not worked since that time.

Serrano started having problems with her right hand and fingers in February 2007. She reported her problems to human-resource administrator Amber Pate, who referred Serrano for treatment at the Northwest Family Care Clinic. On February 21, 2007, Serrano was seen by Dr.

---

1. She worked in the "assembly," "crinkle," "tagging," and "decoupage" departments.

Robert Wilson. At that visit, Serrano complained that her right index and middle fingers were "locking up" and that she had pain in the palm of her hand. She was diagnosed with tendonitis in the two fingers. Her condition was accepted as compensable, and appellee Arch Insurance Company (Arch Insurance) paid related workers' compensation benefits.

At her follow-up appointment at the Northwest Family Care Clinic, Serrano was seen by Dr. William Kendrick, who diagnosed trigger-finger syndrome and referred Serrano to orthopedic surgeon Dr. Peter Tang. Dr. Tang also diagnosed her with trigger-finger syndrome. He administered cortisone injections and restricted Serrano's work duties. When this conservative treatment failed to provide relief, on June 13, 2007, he performed trigger-release surgery on Serrano's right index and middle fingers. In July 2007, the triggering of the index and middle fingers was improved, but Serrano still had complaints of swelling, stiffness, and scar pain in her right hand. At that time, Serrano was returned to one-handed work, which she did. On August 1, 2007, while still restricted to one-handed work, Dr. Tang wrote that Serrano's fingers did not lock and that her swelling and pain were "slowly getting better now." Three weeks later, on August 21, 2007, Serrano returned to Dr. Tang and reported pain and swelling but no numbness or tingling. He modified her restricted work duty to include two-handed work for two hours, twice a day, which Serrano did.

Serrano's next medical appointment was with Dr. C. Noel Henley[2] on October 17, 2007. At this visit, Serrano complained of pain, numbness, and tingling in both hands and all fingers. According to Dr. Henley's report, Serrano was still on modified restricted duty, but she was having to use both of her hands at work beyond the work restriction. Dr. Henley offered Serrano a steroid injection. On November 14, 2007, Serrano returned to Dr. Henley with reports of improvement from the steroid injection and, because of her November 2007 job change to the shipping department, Dr. Henley returned Serrano to work without restrictions, which she did.

On January 15, 2008, Serrano returned to Dr. Henley with complaints of pain and tingling in her right hand. Dr. Henley's report stated that he had no surgery options for Serrano and did not recommend further injections. He opined that she had reached maximum medical improvement for the original trigger-finger-syndrome injuries, that she needed a functional capacity evaluation, and that she could continue full-duty work.

Serrano sought treatment on her own from Dr. James Kelly in May 2008. She reported complaints of pain in her third and fourth fingers of her right hand along with pain and swelling in that hand. Dr. Kelly clinically diagnosed her with right CTS. He ordered EMG/NCV testing, which confirmed his diagnosis. On July 18, 2008, Dr. Kelly recommended that Serrano have right CTS release surgery and a fourth-finger trigger-release surgery.

On July 28, 2008, a hearing was held before an administrative law judge (ALJ) to determine whether Serrano suffered any compensable injuries to her right hand (other than the trigger-finger-syndrome injuries suffered to the right index and middle fingers) and whether she was entitled to medical treatment for such injuries. At that time, the only respondents were Westrim and Arch Insurance, which was on the risk until December 31, 2007. The ALJ issued an opinion in favor of Serra-

---

2. Serrano was referred to Dr. Henley due to Dr. Tang's retirement.

no, finding that she sustained a compensable CTS injury to her right hand.

Westrim and Arch Insurance appealed the ALJ's opinion. On June 29, 2009, the Commission vacated the ALJ's opinion and remanded the claim based on evidence at the hearing that a new carrier had come on the risk on January 1, 2008. The Commission found that because the new carrier, appellee Travelers Insurance Company (Travelers), may be responsible for Serrano's alleged compensable injuries, Travelers was a necessary party and additional proceedings and adjudication were required.

On remand, the parties stipulated that Arch Insurance was the workers' compensation carrier for Westrim from January 1, 2007 to December 31, 2007, and that Travelers was the carrier for Westrim beginning January 1, 2008. Serrano claimed that during her employment with Westrim she suffered a compensable CTS injury to her right hand, and she sought medical treatment for same. She testified that she had pain and swelling in her right hand after the June 2007 surgery. She further testified that she continued to have pain and swelling in her right hand in November 2007, after she was transferred to the shipping department.

On August 4, 2010, the ALJ issued a second opinion finding that Serrano established a compensable right CTS injury. The ALJ also found that Serrano established that her injury was causally related to her employment with Westrim. In reaching this finding, the ALJ stated that Serrano had no difficulties with her right hand prior to her employment with Westrim; that her first job was at Westrim; that for the entire period of Serrano's initial employment with Westrim in 2002 until November 2007, her employment duties involved hand-intensive activities, performed continuously in a rapid, repetitive manner; that she first experienced right-hand symptoms in February 2007, she reported those problems to her employer at that time, and she was treated and diagnosed with trigger-finger syndrome; that her compensable index- and middle-finger injuries "could have easily masked the first appearance of the symptoms from the carpal[-]tunnel syndrome"; that she continued to complain of pain, swelling, numbness, and tingling (all symptoms of CTS) following surgery for her compensable finger injuries and following the November 2007 department change; that Dr. Henley's October 17, 2007 report noted that Serrano complained of numbness and tingling in the right hand and reported that she was having to use both hands at work despite being on restricted work duty; and that Dr. Henley's later reports opining that Serrano was at maximum medical improvement were addressing the trigger-finger injuries and not her new complaints. The ALJ further found that

[Serrano's] testimony, which is supported by the October 17, 2007 report of Dr. Henley, shows that symptoms indicative of the onset of right carpal[-]tunnel syndrome (pain, numbness, and tingling in her wrist, hand, and fingers) first appeared after [Serrano's] surgery for the compensable trigger[-]finger syndrome and after she was released to resume the use of her right hand to perform the employment-related activities of "crinkling," "packing," "tagging," and "decoupage." Even being performed for only two hours at a time, for a total of four hours out of an eight-hour shift, such continuous, rapid, and repetitive use of [Serrano's] right hand could logically result in the development of carpal[-]tunnel syndrome. This is particularly true, when these hand intensive activities were suddenly resumed after

six months of extremely limited use of this portion of [Serrano's] body.

Further, the evidence fails to show the occurrence of any trauma or injury to [Serrano's] right wrist, within a reasonable time prior to the onset of her carpal[-]tunnel syndrome. The evidence also fails to show that [Serrano] had any systemic problems, such as pregnancy or diabetes, that could precipitate carpal[-]tunnel[-]syndrome symptoms. Finally, there is no evidence that [Serrano] engaged in any non employment-related hand[-]intensive activities around the time of the onset of her carpal[-]tunnel[-]syndrome symptoms. Thus, the evidence fails to show any other reasonable cause for [Serrano's] right carpal[-]tunnel syndrome.

I find that [Serrano] has proven the existence. of a causal relationship between her employment activities for Westrim, Inc. in August, September, and October of 2007, and her right carpal[-]tunnel syndrome. The greater weight of the evidence shows that her employment activities for Westrim, Inc. could logically produce such a condition, that the condition occurred within a reasonable period of time following these employment-related activities, and that there is no other equally plausible cause for such a condition.

The ALJ also found that medical treatment for Serrano's CTS injury was reasonable and necessary and that Arch Insurance was liable for any benefits to which Serrano was entitled for her injury. Finally, the ALJ found that Serrano did not establish that she suffered a compensable injury to her right hand in the form of CTS on or after January 1, 2008, when Traveler's was on the risk.[3]

Westrim and Arch Insurance appealed the ALJ's opinion, and the Commission reversed the ALJ's award and dismissed Serrano's claim. In reversing, the Commission expressly disagreed with the finding of the ALJ that Serrano proved that she sustained a compensable right CTS injury arising out of her employment with Westrim between August and October 2007. The Commission stated that such a finding "would require sheer speculation and conjecture." For support, the Commission relied on Dr. Henley's report of October 17, 2007, wherein he related Serrano's complaints of pain to the trigger-finger injuries and did not diagnose Serrano with CTS. The Commission also relied on its findings that Serrano did not seek medical treatment between August 21, 2007, and October 17, 2007; that she changed to a less hand-intensive department in November 2007; that on November 14, 2007, she reported to Dr. Henley that she had improved symptoms; and that Dr. Henley, after examining her in November 2007 and January 2008, did not diagnose her with CTS.

Serrano timely appeals from the Commission's opinion. She argues that there is substantial evidence supporting her argument that she suffered a compensable injury, in the form of CTS, to her right hand. However, our standard of review is not whether substantial evidence supports her claim. Rather, in reviewing a decision of the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm those findings if they are supported by substantial evidence, which is evidence a reasonable person might accept as ade-

---

**3.** This finding of the ALJ was not appealed to the Commission and is not an issue on appeal.

quate to support a conclusion. *Johnson v. Superior Indus.*, 2009 Ark. App. 483, at 1, 2009 WL 1708755. The findings of the Commission will be upheld unless there is no substantial evidence to support them. *Id.* Substantial evidence exists only if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. *Id.* Conjecture and speculation, even if plausible, cannot take the place of proof. *Id.* Although the appellate court defers to the Commission on issues involving the weight of the evidence and the credibility of the witnesses, it may not disregard testimony and is not so insulated as to render appellate review meaningless. *Id.*

We will not reverse the Commission's decision unless we are convinced that fair-minded people with the same facts before them could not have reached the same conclusions reached by the Commission. *Id.* at 2. In a case such as this one, where the Commission denies benefits because a claimant failed to meet his or her burden of proof, the appellate court will affirm if the Commission's decision displays a substantial basis for the denial of relief. *Id.* If reasonable minds could have reached the result shown by the Commission's decision, we must affirm. *Id.*

Serrano's CTS claim, a gradual-onset injury, requires proof that the injury arose out of and in the course of employment and that the work-related injury was the major cause of the need for medical treatment. Ark.Code Ann. § 11–9–102(4)(A) & (E) (Supp.2011). Additionally, a compensable injury must be established by medical evidence supported by objective findings. Ark.Code Ann. § 11–9–102(4)(D). Objective medical evidence is necessary to establish the existence and extent of an injury but not essential to establish the causal relationship between the injury and a work-related accident. *Wal–Mart Stores, Inc. v. VanWagner*, 337 Ark. 443, 447, 990 S.W.2d 522, 524 (1999).

In its opinion, the Commission wrote,

[B]ased on our de novo review of the entire record, ... [Serrano] did not prove by a preponderance of the evidence that she sustained a compensable injury. [Serrano] did not prove that she sustained a right carpal [-]tunnel[-]syndrome injury which caused physical harm to the body, and [Serrano] did not prove that she sustained a right carpal[-]tunnel syndrome[-]injury which arose out of and in the course of employment. [Serrano] did not prove by a preponderance of the evidence that the alleged compensable injury was the major cause of her disability or need for treatment.

Despite this broad conclusion that encompasses several elements of a compensable gradual-onset injury, the Commission actually made findings related to only one element—whether the injury arose out of and in the course of Serrano's employment. And despite a multitude of findings made by the ALJ in its decision, the Commission's opinion on causation was limited to attacking and reversing one particular finding made by the ALJ—that Serrano sustained a compensable right CTS injury between August 21 and October 17, 2007.

The Commission is not an appellate court. *Willmon v. Allen Canning Co.*, 38 Ark.App. 105, 106, 828 S.W.2d 868, 869 (1992) (citing *White v. Air Sys., Inc.*, 33 Ark.App. 56, 58, 800 S.W.2d 726, 728 (1990)). The Commission reviews cases appealed to it de novo, and the duty of the Commission is not to determine whether there was substantial evidence to support the ALJ's findings; rather, it must make its own findings in accordance with a preponderance of the evidence. *Pharmerica*

*v. Seratt,* 103 Ark.App. 9, 13, 285 S.W.3d 699, 703 (2008).

██ In this case, the Commission failed to perform its duty in conducting a de novo review of the ALJ's opinion. Instead of making new findings to support its conclusion that Serrano did not prove a compensable injury, the Commission concluded that one of the ALJ's findings— that Serrano suffered a CTS injury during the period of August 21 to October 17, 2007—was incorrect. This is insufficient.

Furthermore, we note that Serrano claimed that she suffered a right CTS injury during her employment with Westrim. She did not limit the time in which she sustained her injury to any specific period. The Commission failed to make any findings whatsoever as to whether Serrano sustained a compensable right CTS injury during any other time in 2007. Essentially, the Commission's opinion finds that Serrano was not *diagnosed* with a CTS injury between August 21 and October 17, 2007. It does not make findings on the issue of whether she sustained a CTS injury during that time or any other time during 2007.

Because the Commission's opinion merely attacks one finding made by the ALJ and fails to make a de novo review of the entire case, we hold that the Commission's opinion in the case at bar falls short of the minimum requirements, and consequently, cannot be reviewed by us in any meaningful way. Accordingly, we reverse and remand for the Commission to conduct a de novo review and make findings of fact sufficient for our review.

Reversed and remanded.

PITTMAN and GRUBER, JJ., agree.