Cite as 2019 Ark. App. 552

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-19-437

| | |
|---|---|
| | **Opinion Delivered:** November 20, 2019 |
| GREENE COUNTY JUDGE AND ASSOCIATION OF ARKANSAS COUNTIES RISK MANAGEMENT SERVICES | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION |
| APPELLANTS | [NOS. G801022 & G802107] |
| V. | |
| RICK L. PENNY | |
| APPELLEE | |
| | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellants, Greene County Judge (employer) and Association of Arkansas Counties Risk Management Services (insurance carrier) (collectively appellants), appeal from an April 18, 2019, opinion by the Arkansas Workers' Compensation Commission (Commission) affirming in part and reversing in part the findings of fact and conclusions of law made by the administrative law judge (ALJ) in favor of appellee, Rick L. Penny (sometimes referred herein as claimant). The Commission unanimously determined that Penny did not prove that he sustained a gradual-onset back injury in 2017.[1] However, the Commission did find that Penny sustained a compensable injury on February 6, 2018; that the medical treatment of record on and after February 6, 2018, was reasonable and necessary; that Penny was

---

[1]Penny did not file a cross-appeal as to that finding; therefore, it is unnecessary for us to discuss in any detail the Commission's findings regarding his alleged gradual-onset back injury in 2017.

entitled to temporary total-disability benefits from February 6, 2018, until June 1, 2018; and that Penny's attorney was entitled to attorney's fees. Appellants argue that substantial evidence does not support the Commission's decision. We affirm.

I. *Relevant Facts*

Penny testified that he was first employed by the employer in 2007 in the Greene County Road Department as a truck driver and excavator operator until his first period of employment ended in September 2009. Penny testified that his work entailed "a lot of jarring and shaking, climbing on and off the machine. They're not exactly the easiest riding machines that you've ever ridden." Penny further testified that he was employed a second time by the employer in April 2011 as a "[t]ruck driver, excavator, dozer, run the grader some, just equipment operator." He described his work as very physically demanding. In 2017, the department acquired new trucks that Penny stated rode "rougher" than a normal truck.

On February 6, 2018, Penny alleged that he sustained a specific-incident compensable injury.

> February 6, it was a Tuesday morning and I'd hauled two loads of chaff, cut through the yard and loaded it with the loader, put it in my truck and took it to dump it. I was on the third load and I went in, loaded it, was coming down out of the loader and stepped down with my right foot and when my left foot hit the ground, I buckled to my knees in excruciating pain and I couldn't move at that time and I sat there. . . . I tried to stand up. . . . I sat there a minute and I crawled around to the back of the loader, pulled myself up just a little bit, because I heard a truck coming and I went to waving and when I waved, I waved down Shannon Anthony, the road foreman, and he come over and helped me in the truck and took me to the hospital. . . . He took me to the hospital and we met with Dave Tierney at the emergency room.

2

Shannon Anthony, the road foreman, and Dave Tierney, the road superintendent, corroborated Penny's testimony. Anthony testified that Penny appeared to be in severe pain and had trouble standing. Therefore, Anthony took Penny to Arkansas Methodist Medical Center as Tierney instructed.

The medical record indicates that Dr. Michael W. Jarman, Penny's chiropractor, began treating Penny in July 2010 for hip pain and lumbar pain. On July 19, 2010, Dr. Jarman noted, "Muscle spasm was present along the right lumbar paravertebral region, extending into the right sacral and right pelvic region." Penny had two follow-up appointments with Dr. Jarman on July 21, 2010, and July 22, 2010. Subsequently, Dr. Jarman treated Penny on April 26, 2016, and May 11, 2017, but he did not report muscle spasms on either date. On September 25, 2017, Dr. Jarman diagnosed Penny with "Somatic Dysfunction of the lumbar spine associated with Sciatic Neuritis affecting the lower right extremity." He noted that muscle spasms were present at L5 on the right. Dr. Jarman provided ongoing treatment, which consisted of spinal manipulation and lumbar traction. On September 27, 2017, Dr. Jarman noted muscle spasms "along the right lumbar paravertebral region, extending into the right sacral and right pelvic region." Penny continued to see Dr. Jarman on several subsequent visits, and an MRI was taken of Penny's lumbar spine on November 7, 2017, which indicated "[d]iscogenic degenerative change at L/3–4, L/4–5. Disc herniation, acquired spinal stenosis L/4–5 with a disc fragment, spinal stenosis 7.2mm. Fragment paracentral on the right at L/4–5."

3

Penny was treated at Arkansas Methodist Medical Center on February 6, 2018, after his alleged specific-incident injury. According to the clinical report, the following history was listed:

> Chief Complaint: BACK PAIN. It is described as being moderate in degree and in the area of the *left* lower lumbar spine and *left* SI joint and radiating to the *left* thigh and *left* buttock. The quality is noted to be sharp. Onset – has chronic back pain but worse today; Patient states he stepped down off excavator and states he has had pain to *left* lower back since, and it is still present. It was abrupt in onset. No bladder dysfunction, bowel dysfunction, sensory loss or motor loss.

(Emphasis added.) The clinical impression indicated "[c]hronic nontraumatic lumbar back pain (INTRACTABLE). Herniated disc (nontraumatic) at the lower lumbar level with sciatica."

Subsequently, Penny was transported to Baptist Memorial Hospital in Memphis, Tennessee, for further care. Dr. Ashutosh Kumar Mishra examined Penny on February 7, 2018, at the hospital. He noted the following in pertinent part:

> Lower lumbar spine, *bilateral* moderately *severe* muscle spasm, reduction of movement, tenderness in *bilateral* sacral sciatic notch. SLR positive *bilaterally*.
>
> ASSESSMENT: *Bilateral* low back pain with sciatica with displacement of intervertebral disk of lumbar region with muscle spasm.

(Emphasis added.) Thereafter, an MRI was taken on February 8, 2018, and the report stated the following impressions and assessment:

> Impressions: *Large* right paracentral L4–5 disc herniation with *high-grade* spinal stenosis, as detailed in the report.
>
> ASSESSMENT:
> Active Problem(s):
> *Bilateral* low back pain with sciatica
> Displacement of intervertebral disc of lumbar region
> Muscle spasm
> Lumbago-sciatica due to displacement of lumbar intervertebral disc

4

IMPRESSION:
Large right sided disc at L4–5 with *new left* sided symptoms

PLAN:
PT evaluate
Dr. Hoit to review imaging and follow with further recommendations

(Emphasis added.)

Dr. Daniel Hoit performed surgery on February 9, 2018, and his operative report stated that he performed a "L4–L5 laminectomy." Dr. Hoit further noted that Penny had been "diagnosed by MRI with a large free fragment disk herniation L4–L5 with severe central spinal stenosis at this level. He undergoes this procedure for neurological decompression." Penny testified that his condition improved after the surgery. Dr. Hoit reported the following on February 20, 2018:

> Mr. Rickey Penny comes back to the office today in followup. He is doing well. His radiculopathy is largely resolved in the right leg, although he does still complain of some parensthesias. It is significantly improved from preoperative.

Penny continued to receive follow-up treatment and subsequently returned to work on June 1, 2018.

The ALJ filed a prehearing order on June 11, 2018. Penny contended that in September 2017, he strained his lower back. He further contended that on February 6, 2018, he sustained an acute aggravation of his lower-back condition that required neurological surgery. Appellants contended that Penny did not sustain a compensable work injury or aggravation to his back. Rather, appellants contended that Penny suffered from a preexisting, degenerative condition and that no new objective findings existed to prove the existence of a new injury, aggravation, or recurrence.

5

On July 2, 2018, Dr. Jarman provided the following letter to Penny's attorney in anticipation of a hearing on the merits:

> Mr. Rick Penny presented to this office on 09/25/2017 with symptoms of low back pain, *right* hip pain, and *right* leg pain. He described an onset of these symptoms approximately 6 months prior due to work related activity. This included work involving a bulldozer, dump truck, excavator, front-end loader and other pieces of equipment related to his job activities. He described one particular occasion in April 2017 after getting in and out of a new dump truck that was taller than the one he had been used to working on causing an increase in his low back and *right* leg symptoms. He also described on most days spending several hours either in the dump truck or operating a bulldozer and excavator in a gravel pit.

> Examination of Mr. Penny on 09/25/2017 revealed decreased lumbar spine range of motion. Muscle spasm was present at L5 on the *right*. Trigger points were noted along the *right* lumbar paravertebral region. Hypertonicity was noted over the *right* Pscas. Hypertonicity was also noted over the *right* Tensor Fascia Latae. Point tenderness was noted in the *right* pelvis and *right* hip.

> Mr. Penny was diagnosed with somatic dysfunction lumbar region with associated sciatic neuritis affecting the *right* hip and *right* lower extremity. A regimen of twelve treatments including spinal manipulation and lumbar decompression was recommended. On 10/19/2017 due to a lack of clinical improvement I recommended Mr. Penny obtain an MRI of the lumbar spine. This was performed on 11/07/2017 at Arkansas Methodist Medical Center and revealed a L4–L5 disc herniation with focal disc fragment and fluid posterior and slightly *right* of midline effacing the thecal sac and producing an acquired spinal stenosis of 7.2 mm.

> Mr. Penny received additional chiropractic treatment through 11/08/2017 and continued working. On February 6, 201[8], Mr. Penny was coming down from a front-end loader and when his foot hit the ground, he experienced significant acute pain and radicular symptoms and was taken to AMMC and later transported to Memphis, TN where he underwent neurological surgery with Dr. Daniel Hoit at Semmes Murphey Neurological Clinic.

> It is my opinion after reviewing the entire medical chart of Mr. Penny including the MRI reports and physician notes of Dr. Hoit, Dr. Mishra, and the Neurological Nurse Practitioner Grace Phelps, as well as the findings I recorded while Mr. Penny was under my care, that *the incident of February 6, 2018 represents an acute exacerbation of pre-existing low back problems related to his work activity which required neurological surgery*.

(Emphasis added.)

6

A hearing was held before the ALJ on August 17, 2018. The ALJ determined that Penny had failed to prove that he sustained a "gradual onset back injury arising out of and in the course of his employment with respondent on or about September 1, 2017." The ALJ additionally found that Penny had failed to prove that he sustained "a specific incident injury arising out of and in the course of his employment on February 6, 2018."

Penny appealed to the Commission. The Commission unanimously affirmed the ALJ's finding that Penny had failed to prove that he sustained a compensable September 2017 injury because there was no probative evidence demonstrating that Penny provided appellants with statutory or actual notice of that alleged injury. However, the Commission unanimously reversed the ALJ in part and found that Penny had sustained a compensable injury on February 6, 2018. The Commission's April 18, 2019, opinion stated the following in pertinent part:

> The claimant testified that, while performing employment services on February 6, 2018, he stepped down from a loader and immediately felt "excruciating" pain. The claimant testified that he buckled to his knees and was unable to walk for a time. The claimant testified that he "waved down" his supervisor, Shannon Anthony, who transported the claimant to a hospital for emergency treatment. Shannon Anthony testified and corroborated the claimant's testimony: "Rick flagged me down. He was leaned over the back of a wheel loader and I went over to see what was wrong and he said he had stepped off the loader and his back had done something and his legs – couldn't hardly stand up." Dave Tierney, the respondent-employer's Road Superintendent, corroborated the claimant's testimony and Shannon Anthony's testimony. Mr. Tierney met the claimant at the hospital and initiated a claim for workers' compensation.
>
> The claimant treated at Arkansas Methodist Hospital on February 6, 2018. The medical provider noted that the claimant suffered from chronic back pain but also noted that the claimant's pain had abruptly worsened as the result of stepping down from an "excavator." An MRI showed on February 8, 2018 showed "Muscle spasm." It is well-settled that muscle spasms constitute objective medical findings. *Continental Express, Inc. v. Freeman*, 339 Ark. 142, 4 S.W.3d 124 (1999). The Full Commission recognizes Dr. Jarman had reported muscle spasm at various times

7

beginning in 2010. Nevertheless, the evidence in the present matter demonstrates that the muscle spasm reported on February 8, 2018 was a result of the February 6, 2018 specific incident rather than a prior injury or pre-existing condition. The MRI taken on February 8, 2018 showed "Large right sided disc at L4–5 with new symptoms." The Full Commission finds that the herniated disc reported on February 8, 2018 was causally related to the February 6, 2018 accident rather than a prior injury or pre-existing injury.

The claimant signed a Form AR-N, Employee's Notice Of Injury, on February 8, 2018. The claimant reported on the Form AR-N that an injury had occurred on February 6, 2018 but indicated that he "Had no clue" regarding the cause of injury. The claimant testified that "I have no clue of what happened at that time. I have no clue, but there was something that went wrong in my back or somewhere that made me hit the ground, but I have no clue of what went wrong in there." The claimant's notation of having "no clue" does not invalidate the claimant's testimony that an accident occurred on February 6, 2018 while the claimant was performing employment services.

The Full Commission finds that the claimant proved by a preponderance of the evidence that he sustained a compensable injury. The claimant proved that he sustained an accidental injury causing physical harm to the body. The accidental injury arose out of and in the course of employment, required medical service, and resulted in disability. The injury was caused by a specific incident and was identifiable by time and place of occurrence on February 6, 2018. The claimant established a compensable injury by medical evidence supported by objective findings. These objective findings include the muscle spasm and disc herniation reported on the February 8, 2018 MRI. We find that these objective medical findings were causally related to the February 6, 2018 compensable injury and were not the result of a prior injury or pre-existing condition.

After reviewing the entire record de novo, the Full Commission finds that the claimant did not provide statutory notice or actual notice of a gradual-onset back injury allegedly occurring in 2017. The claimant is not entitled to benefits for this alleged injury. The Full Commission finds that claimant proved he sustained a compensable injury on February 6, 2018. The Full Commission finds that the medical treatment of record on and after February 6, 2018, including surgery performed by Dr. Hoit, was reasonably necessary in accordance with Ark. Code Ann. § 11-9-508(a) (Repl. 2012). The claimant proved that he remained within a healing period and was totally incapacitated from earing wages beginning February 6, 2018 until June 1, 2018, when the claimant returned to work for the respondents. The claimant therefore proved he was entitled to temporary total disability benefits from February 6, 2018 until June 1, 2018. *See Ark. State Hwy. Dept. v. Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1981).

8

The claimant's attorney is entitled to fees for legal services in accordance with Ark. Code Ann. § 11-9-715(a) (Repl. 2012). For prevailing in part on appeal, the claimant's attorney is entitled to an additional fee of five hundred dollars ($500), pursuant to Ark. Code Ann. § 11-9-715(b) (Repl. 2012).

This appeal followed.

## II. *Standard of Review*

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission. *Id.* Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id.* Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony, and we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *Wilson v. Smurfit Stone Container*, 2009 Ark. App. 800, 373 S.W.3d 347. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id.* Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Prock*, *supra*.

9

### III. *Compensable Injury*

Appellants contend that substantial evidence does not support the Commission's finding that Penny suffered a specific-incident compensable injury on February 6, 2018. Appellants do not dispute that muscle spasms constitute objective findings. *See Cont'l Express, Inc. v. Freeman*, 339 Ark. 142, 4 S.W.3d 124 (1999). Rather, appellants more specifically argue that the Commission failed to specifically state that Penny sustained an aggravation or exacerbation of a preexisting condition. They allege that the Commission instead mistakenly found that Penny's preexisting condition was a new injury and was caused by the February 6, 2018, incident. They explain that Penny had the same condition before and after the alleged specific incident, that Penny complained of the same symptoms before and after the alleged specific incident, and that the MRI did not show any new objective findings. Therefore, they argue that the Commission's decision was not supported by the evidence.

To prove the occurrence of a specific-incident compensable injury, the claimant must establish that (1) an injury occurred arising out of and in the scope of employment; (2) the injury caused internal or external harm to the body that required medical services or resulted in disability or death; (3) the injury is established by medical evidence supported by objective findings as defined in Arkansas Code Annotated section 11-9-102(16); and (4) the injury was caused by a specific incident and is identifiable by time and place of occurrence. Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2012). Section 11-9-102(16) defines objective findings as findings that cannot come under the voluntary control of the patient. Moreover, the statute provides that neither complaints of pain nor range-of-motion tests shall be

10

considered objective medical findings. *Id.* The claimant has the burden of proving these elements by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(4).

An employer takes the employee as the employer finds him, and employment circumstances that aggravate preexisting conditions are compensable. *Vaughn v. Midland Sch. Dist.*, 2012 Ark. App. 344. A preexisting disease or infirmity does not disqualify a claim if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the disability for which workers' compensation benefits are sought. *Id.* An aggravation is a new injury resulting from an independent incident, so it must meet the definition of a compensable injury in order to establish compensability for the aggravation. *Liaromatis v. Baxter Cty. Reg'l Hosp.*, 95 Ark. App. 296, 236 S.W.3d 524 (2006). A compensable injury must be established by medical evidence supported by objective findings, which are findings that cannot come under the control of the patient, such as complaints of pain or tenderness. *See Ozark Nat'l Food v. Pierson*, 2012 Ark. App. 133, 389 S.W.3d 105. As interpreted by our appellate courts, this means that an aggravation, being a new injury, must be evidenced by objective medical findings of a new injury to the preexisting condition. *Vaughn, supra*; *Mooney v. AT&T*, 2010 Ark. App. 600, 378 S.W.3d 162. It is the injury for which appellant seeks benefits that must be supported by objective medical findings. *Liaromatis, supra.*

Here, the Commission fully acknowledged the fact that Penny had preexisting chronic back pain. The medical records noted that Penny had experienced "muscle spasms" prior to the February 6, 2018, incident. Additionally, a November 7, 2017, MRI indicated "[d]iscogenic degenerative change at L/3–4, L/4–5. Disc herniation, acquired spinal

11

stenosis L/4–5 with a disc fragment, spinal stenosis 7.2mm.  Fragment paracentral on the right at L/4–5."  Appellants would have us conclude that based on these previous medical records, there were no "new" objective medical findings.  We disagree.

After the February 6, 2018, incident, Penny was treated for back pain at Arkansas Methodist Medical Center.  According to those notes, unlike previous medical notations, the pain was "described as being moderate in degree and in the area of the *left lower lumbar spine and left SI joint and radiating to the left thigh and left buttock*.  The quality is noted to be sharp.  Onset – has chronic back pain but worse today; Patient states he *stepped down off excavator and states he has had pain to lower back since*."  (Emphasis added.)  Although the February 8, 2018, MRI indicated that Penny still had a disc herniation as did the previous MRI, this time the MRI impression stated, "*Large* right paracentral L4–5 disc herniation with *high-grade* spinal stenosis."  (Emphasis added.)  Further, Dr. Mishra did not simply note that Penny had the same type of "muscle spasms" that Dr. Jarman had previously noted on other various occasions.  Instead, Dr. Mishra noted after his physical examination at Baptist Memorial Hospital that Penny exhibited "*bilateral* moderately *severe* muscle spasm[s]."  (Emphasis added.)  Moreover, even Dr. Hoit's operative report reflected that Penny had been "diagnosed by [the February 8, 2018,] MRI with a large free fragment disk herniation L4–L5 with *severe* central spinal stenosis at this level."  With these facts, we cannot say that substantial evidence does not support the Commission's finding that Penny's specific-incident injury was supported by objective medical findings of a new injury.

Further, contrary to appellants' argument on appeal, substantial evidence supports the Commission's decision that Penny's new injury resulted from the February 6, 2018, work-

12

related incident. Although objective medical findings are required to establish the existence and extent of an injury, objective medical findings are not required to establish causation. *Vaughn, supra*; *City of El Dorado v. Smith*, 2017 Ark. App. 307, 521 S.W.3d 523. Causation often comes down to a decision on the credibility of the claimant; medical evidence on causation is not required in every case. *Vaughn, supra*; *Wal-Mart Stores, Inc. v. VanWagner*, 337 Ark. 443, 990 S.W.2d 522 (1999).

Even though medical evidence is not required in every case, Penny offered Dr. Jarman's medical opinion as to causation. Dr. Jarman specifically opined in his letter "that the incident of February 6, 2018 represents an acute exacerbation of pre-existing low back problems related to his work activity which required neurological surgery." Appellants argue that Dr. Jarman's opinion is not credible because it was prepared in anticipation of litigation. However, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Prock, supra*. Additionally, Penny testified—as corroborated by Anthony and Tierney—that he felt abrupt, excruciating pain as he stepped down from an excavator. He explained that he had difficulty standing and that Anthony helped him into the truck and transported him to the hospital. Prior to February 6, 2018, even with his preexisting back pain, Penny had been able to perform his work duties. Therefore, even if we might have weighed the evidence differently, based on our standard of review, we cannot say that fair-minded persons with

the same facts before them could not have reached the conclusions arrived at by the Commission. Thus, we affirm the Commission's decision.

Affirmed.

WHITEAKER and BROWN, JJ., agree.

*Jason M. Ryburn*, for appellants.

*Wells & Wells PLLC*, by: *Phillip Wells*, for appellee.